**Dennis J. MEYERS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 1491.**

Supreme Court of Alaska.

Sept. 24, 1971.

Herbert D. Soll, Public Defender, Meredith A. Wagstaff, Asst. Public Defender, Anchorage, for appellant.

Monroe Clayton, Dist. Atty., Lyle R. Carlson, Asst. Dist. Atty., Fairbanks, for appellee.

OPINION

Before BONEY, C. J., and RABINOWITZ, CONNOR, and ERWIN, JJ.

ERWIN, Justice.

This is a sentence appeal from a sentence of eight years' imprisonment with two years suspended entered on April 21, 1971, for the sale of depressant, stimulant, or hallucinogenic drugs.[1]

Dennis Meyers is a 23-year-old native-born Alaskan, who is a high school graduate, married, and whose wife was expecting a child at the time of sentencing herein.

---

1. A violation of AS 17.12.010 and punishable under AS 17.12.110(b) (1) as follows:

[F]or the first offense, by imprisonment for not more than 25 years, or by a fine of not more than $20,000, or by both; * * *.

Appellant has no particular job skills and had not worked steadily until he recently became employed at Elmendorf Air Force Base as a laborer.[2] Appellant has no criminal history, except for traffic violations and a juvenile matter which took place in 1962; neither were given weight by the sentencing court. Appellant lived at home for a large period of time after graduation from high school in Anchorage, including the duration of a first marriage which ended in divorce in 1969.

The event in question took place at Fairbanks, Alaska, when appellant, his present wife, and two friends drove from Anchorage, Alaska, their home, to Fairbanks to arrange a sale of narcotic and hallucinogenic drugs. The sale to an undercover police officer was consummated at a motel room in the Air View Motel at Fairbanks. At that time the trooper purchased 52 "hits" of acid, 148 tabs of Mescaline, and a sack containing 1,000 cross tops of amphetamines for the sum of $1,500. After the sale, the appellant still had in his possession 92 tablets of Scyillicylum,[3] 148 "hits" of LSD, and 52 tabs of Mescaline.[4]

Appellant was arrested in the motel room, and his wife was taken into custody outside the room while waiting in the family car. There was a quantity of marijuana in her purse. She explained that she had taken it from the glove box on the approach of the state police officer. At the time of arrest, appellant was wearing a 22-caliber revolver in a shoulder holster.

Appellant claimed that he was attempting to sell the narcotics and hallucinogenic drugs for money in order to improve his financial status because he was worried about his wife and the forthcoming birth of a child. Appellant further contended that the drugs had been given to him by a friend as part payment of rent for use of appellant's house in Anchorage, while he and his wife were on a trip to Hawaii. Appellant further informed the court at the time of the sentencing that he had attempted to sell the material in Fairbanks instead of Anchorage because the price was higher there.

At the sentencing hearing, the trial judge indicated that he placed a great deal of weight in sentencing on the quantity of drugs involved, and characterized the amount involved here as the greatest quantity of drugs in any case which had come before him. The trial judge further indicated that he did not believe the story of the defendant concerning the method of acquiring the drugs, but that he was satisfied that the motive for sale was profit. He inferred that he considered the appellant a wholesale merchant of drugs.

The presentence report reveals that the appellant has exhibited little responsibility in the past either toward school or work; appellant admits using his industrial injury as an excuse not to work. The presentence report, prepared in Anchorage by an officer of the Division of Corrections, recommended that no probation be granted; the probation officer recommended at the hearing that an eight-year sentence with four years suspended be imposed. A significant point in the report was the impression of the probation officer that appellant was less than truthful.[5]

---

2.  Appellant was unemployed more than half the time since completing high school in June of 1967; however, included in this period was an interval of time during which appellant was recuperating from an industrial injury to his hands.

3.  The Indictment charged possession for purposes of sale of the hallucinogenic drug "Scyillicylum". Independent inquiry has revealed no such drug as "Scyillicylum". We assume the state intended to charge possession of "Psilocybin", which is hallucinogenic. In any event, any confu-

sion would not have affected the sentencing below because of the contemporaneous possession of large quantities of LSD, Mescaline and amphetamines, which were properly charged.

4.  The quantity of drugs seized was so described in the Indictment and the presentence report without more exact measure of quantity and refers to the presence of drugs in capsule form.

5.  We, however, find that references in the presentence report concerning the truthfulness of appellant's wife as reflecting

The eight-year sentence with four years suspended was concurred in by the District Attorney, who additionally pointed out the community problem in Fairbanks with drugs of all types.

The trial judge, after reviewing the background of appellant, concurred with the recommendation of no probation, and sentenced the appellant to eight years with two years suspended. Appellant asserts that this sentence was excessive under the circumstances.

In the case of State v. Chaney,[6] we set forth the various principles in undertaking sentencing review. In the case of Waters v. State, 483 P.2d 199, 201 (Alaska 1971), we set forth standards for the imposition of sentence in drug offense cases, and noted that the judge should take account of four groups of drug offenders whose crimes are in descending order of seriousness: (1) smuggling or sale of large quantities of narcotics or possession of large quantities for sale; (2) smuggling or sale of small quantities of narcotics, or possession of small quantities for sale; (3) possession of narcotics without intent to sell; (4) marijuana offenses.[7]

■ While the sentence imposed in this case may appear to be severe, we do not find that it is outside the zone of reasonableness that we have noted in our prior cases.[8] The trial court indicated that the amount of drugs involved in this case was the largest quantity involved in any case which had come before him. The background history of the defendant did not indicate the necessary financial resources to purchase a quantity of these drugs on his own, or a background of responsibility which might indicate a chance transaction as claimed. The motive for sale was profit, and addiction to drugs was not a factor in the sale.

Both the trial judge and the probation officer indicated that the lack of candidness by appellant was a factor mitigating against any probation. The family situation and background indicates that the defendant had available through other family members financial resources to solve the most pressing of his personal problems. The fact that the defendant had in his possession a gun at the time of the incident, and the fact that he had driven from one city to another in an attempt to complete the sale, create permissible inferences which indicate other than a spur-of-the-moment enterprise.

The factors of deterrence to both the appellant and other members of the community, and the reaffirmation of society's goals, are strongly manifested in this case. Additionally, the need for rehabilitating appellant into a noncriminal member of society is apparent. His present attitude led the Division of Corrections to recommend that this be done in an institutional setting.

■ We are unable to say that the judge did not properly weigh the various factors involved in sentencing.[9] The sentence as imposed is affirmed.

DIMOND, J., not participating.

unfavorably on appellant to be improper. Appellant's wife was not charged with a crime, and her explanation of the event may reflect on her veracity, but cannot be used to speculate on the veracity of her husband absent a showing he induced her to make a false statement.

6. 477 P.2d 441, 444 (Alaska 1970).

7. *See also* The President's Commission on Law Enforcement & Administration of Justice, The Challenge of Crime in a Free Society, 513 (Avon 1968).

8. *See* State v. Chaney, 477 P.2d 441 (Alaska 1970, and Nicholas v. State, 477 P.2d 447 (Alaska 1970).

9. Previously in the case of Robinson v. State, 484 P.2d 686 (Alaska 1971), we commented on the fact that the parole board had never promulgated regulations spelling out the circumstances under which parole might be granted. We have as yet received no indication from the parole board that such regulations have been adopted. There was discussion at the sentencing herein concerning parole which was inappropriate because of the absence of such regulations.