Anthony MORRIS, Appellant,

v.

STATE of Alaska, Appellee.

Randolph Francis MILLER, Appellant,

v.

STATE of Alaska, Appellee.

Nos. 4264, 4318.

Supreme Court of Alaska.

June 26, 1981.

**14**

Bonnie J. Coghlan, Aschenbrenner & Savell, Fairbanks, for appellant Miller.

David C. Backstrom, Deputy Public Defender, Fairbanks, Brian Shortell, Public Defender, Anchorage, for appellant Morris.

Randy M. Olsen, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

BURKE, Justice.

Anthony Morris and Randolph Francis Miller were convicted of dispensing marijuana (Count I) and possession of marijuana for the purpose of sale (Count II) in violation of AS 17.12.010.[1] Morris and Miller were sentenced to five-year terms of imprisonment on each count,[2] to be served

---

1. AS 17.12.010 provides:

*Act prohibited.* Except as otherwise provided in this chapter, it is unlawful for a person to manufacture, compound, counterfeit, possess, have under his control, sell, prescribe, administer, dispense, give, barter, supply or distribute in any manner, a depressant, hallucinogenic or stimulant drug.

2. AS 17.12.110 provides, in relevant part:

(b) A person who violates ... a provision of this chapter relating to the possession or control of depressant, hallucinogenic and stimulant

drugs, when his possession or control is for the purpose of sale or other disposal to another person, is guilty of a felony and upon conviction is punishable as follows:

(1) For the first offense, by imprisonment for not more than 25 years, or by a fine of not more than $20,000, or by both;

(2) For the second and subsequent offenses, by imprisonment for any term *of years or life,* or by a fine of not more than $25,000.00 or by both.

(c) A person who violates a provision of this chapter by selling or otherwise disposing of a

concurrently, with four and one-half years suspended. See AS 12.55.080.

## I

In late February or early March, 1978, Miller asked Andy "Moose" Harlan, age seventeen, if he would sell some marijuana for him. Harlan agreed, and a few days later went to a small cabin in Fairbanks to pick up the marijuana. Harlan purchased a small amount of the drug for his own use for ten dollars, and received an additional four ounces from Miller, with the understanding that he would pay $185.00 for it after he sold it. Later, Morris came from behind a curtain which divided the cabin. Miller handed Morris the ten dollars that Harlan had given him, and told him it was Harlan's payment for some marijuana.

Harlan was arrested shortly after he began his sales efforts, and agreed to cooperate with the police. He and David Curwen, a police agent, returned to the cabin, where Morris answered the door. Harlan told him that Curwen had purchased the four ounces, whereupon Curwen and Morris began to discuss the possibility of more marijuana sales. In the course of the conversation, Morris "indicated that he was supposed to take the [$185.00 owed on the four ounces]; that's what Randy wanted him to do." Curwen gave him the money, which Morris put in his pocket. By this time, Curwen had tentatively agreed to buy an additional one-half pound. Morris "indicated that there was a half-pound at the location, however, it was his partner's, and he indicated the name, Randy, twice in . . . the conversation . . . . That he couldn't get rid of that, he would have to go across town to get his own." A signal was given, and other police officers entered the cabin and arrested Morris. Miller, who had apparently been in the curtained-off section of the cabin while the negotiations between Curwen and Morris took place, was also arrested.

On March 7, 1978, the Grand Jury returned an indictment charging both Miller and Morris with dispensing marijuana to a minor, Andrew Harlan, and possession of marijuana for purposes of sale.

Prior to trial, Miller moved to sever his trial from that of his co-defendant, Morris, on the ground that he would be unable to cross-examine Morris concerning Morris' alleged statements to Curwen. The motion was denied. The court indicated, however, that it would hold a hearing on the admissibility of those statements at the time of trial, and that it would not permit the statements to be introduced if it appeared, at that time, that their introduction would violate Miller's right of confrontation. At trial the court found Morris' references to "Randy" and "my partner" admissible, because there was sufficient independent evidence of a joint undertaking to establish an exception to the hearsay rule.

As previously indicated, Morris and Miller were both convicted on each of the two counts charged.

## II

Morris argues that his conviction on Count I (dispensing marijuana to a minor) was partly the result of an improper instruction. Over Morris' objection, the court instructed the jury on accomplice liability. Morris contends that this deprived him of due process of law under the Fifth Amendment to the United States Constitution and article I, section 7 of the Constitution of Alaska, because he understood the indictment charged him as a principal, not an accomplice. This, he argues, is analogous to charging him with one offense and permitting the jury to find him guilty of another.

Morris' argument is frivolous: there is no distinction between principles and accomplices under Alaska law. AS 12.15.010 (repealed by Ch. 166, § 21, SLA 1978, effective January 1, 1980).[3] "[A]ll persons concerned

depressant, hallucinogenic or stimulant drug to a person less than 19 years of age is guilty of a felony and upon conviction is punishable by imprisonment for any term of years or life, or

by a fine of not more than $25,000.00, or by both.

3. The repeal of AS 12.15.010, and its replacement by the addition of chapter 16 to AS 11,

in the commission of a crime, whether they directly commit the act constituting the crime or, though not present, aid and abet in its commission, shall be prosecuted, tried, and punished as principals." *Id.* The indictment, therefore, was sufficient to put Morris on notice that he could be found liable under evidence showing that he was a principal or under evidence showing that he only acted as an accomplice. *See Scharver v. State*, 561 P.2d 300, 302 (Alaska 1977). Morris does not contend that he was misled as to what facts the state intended to prove, only that he thought those facts were going to be used under instructions which would omit mention of accomplice liability. Thus, we conclude that there was no error.

### III

Morris further argues that, even if the accomplice instruction was properly given, the evidence at trial was insufficient to establish his criminal liability on Count I. According to Morris, there was a complete lack of evidence showing that he aided and abetted Miller's sale of four ounces of marijuana to Harlan.[4] We disagree.

There was evidence showing that Morris was more than a passive observer. He collected the proceeds from two drug sales, including the one to Harlan, and negotiated a third sale with Curwen. Thus, we believe reasonable persons could differ on the question of whether Morris was Miller's partner

and had aided and abetted him in the transaction leading to his conviction on Count I. Such being the case, Morris was not entitled to a judgment of acquittal. *Ladd v. State*, 568 P.2d 960, 969 (Alaska 1977) *cert. denied* 435 U.S. 928, 98 S.Ct. 1498, 55 L.Ed.2d 524; *Gray v. State*, 525 P.2d 524, 526 (Alaska 1974).

### IV

Miller, in his appeal, claims that it was error to refuse to sever the trials because of the incriminating nature of Morris' out-of-court statements to Curwen, which Miller says "should not have been admitted against [him] in a joint trial." Miller's argument misses the point: the trial court found that the out-of-court statements were admissible against Miller, because of the co-conspirator exception to the hearsay rule. Thus, even if the trials had been separate, the evidence would still have been admissible against Miller. If the court erred, it was in admitting the evidence at all, not in denying the motion for separate trials.[5]

The statements attributed to Morris were clearly hearsay[6] as applied to Miller, and the only question is whether they were nonetheless admissible. In *Amidon v. State*, 565 P.2d 1248 (Alaska 1977), we adopted and set out the requirements for

---

was made entirely prospective. Ch. 166, § 23(f), SLA 1978. Thus, AS 12.15.010 continues to apply to all crimes committed before January 1, 1980. *Id.*

4. Morris challenged the sufficiency of the evidence in two motions, one for a directed verdict and one for judgment notwithstanding the verdict. Morris' first motion challenged both counts of the indictment, but no argument was presented regarding Count II. After the verdict, the motion was renewed only as to Count I. Morris' brief claims that the latter motion "was in effect a renewal of the earlier motion for acquittal." We hold that Morris failed to make a valid objection to Count II. Only a single sentence in his brief addresses it, and the issue was not properly presented to the trial court.

5. We observe that in this case the statements objected to were testified to at trial, prior to

resolution of the admissibility issue. Since the trial court then found the statements admissible, this lapse was not of concern to Miller. If, however, the trial court had found that the statements were inadmissible, a mistrial might have been necessary. We take this opportunity to stress the importance of the economical and efficient administration of the judicial system in determining evidentiary issues such as this one in a fashion that will avoid these difficulties. *See generally*, ABA Standards Relating to Joinder and Severance § 2.3 (Approved Draft 1968).

6. This case was tried prior to the promulgation of the Alaska Rules of Evidence. Under the present rules, a co-conspirator's incriminating statements are admissible because they are not within the definition of hearsay. *See* Alaska Rules of Evidence 801(d)(2)(E).

the Alaska version of the co-conspirator exception to the hearsay rule. Relying on *Kay v. United States*, 421 F.2d 1007, 1010 (9th Cir. 1970), we found the exception applicable to a joint trial even in the absence of a conspiracy count. In order to establish the exception, the out-of-court "declaration must have been made while the joint undertaking was continuing, and must have been in furtherance thereof." 565 P.2d at 1259. Furthermore, "the existence of the joint undertaking must be proven independently to justify the admission of the co-defendant's statement." *Id.*

Assuming, for purposes of argument, that the evidence was sufficient to establish a joint undertaking, we are unpersuaded by the state's argument that Morris' statements to Curwen were made in furtherance of the conspiracy. Thus, those statements were not admissible against Miller on the charge contained in Count II of the indictment (possession of marijuana for sale). Since we cannot say this error was harmless, Miller's conviction on Count II must be reversed.

## V

■ In addition to the separate arguments discussed thus far, Miller and Morris raise a joint objection to their convictions on Count I. This claim of error concerns the trial court's refusal to instruct the jury that a reasonable belief that the alleged purchaser was over the age of eighteen years was a defense to the charge.

Count I charged Morris and Miller with selling marijuana "to a minor . . . in violation of AS 17.12.010 and AS 17.12.110." Arguing that they could have reasonably believed that Andrew Harlan "was of legal age," the defendants argue that they should have been acquitted of the charged offense. This argument, we believe, fails to recognize the significance of the purchaser's age at the time of the alleged offense. Contrary to the defendants' belief, and the lan-

guage of their proposed instruction, a reasonable belief that Harlan was over the age of eighteen years would not, in and of itself, have entitled them to an acquittal.

Harlan's age had no bearing on the question of whether the defendants were guilty of a violation of AS 17.12.010. Guilt was established when the jury concluded beyond a reasonable doubt that the defendants sold marijuana to Harlan on the date in question; *regardless of the purchaser's age, the crime of selling marijuana, in violation of AS 17.12.010, was complete.* Harlan's age was important only in determining the punishment that could be imposed for that offense.

If the sale was "to a person less than 19 years of age," Morris and Miller were subject to the enhanced penalty provisions of AS 17.12.110(c), thus "punishable by imprisonment for any term of years or life, or by a fine of not more than $25,000, or by both." Otherwise, they were subject to the lesser penalties authorized by AS 17.12.-110(b)(1): "imprisonment for not more than 25 years, or by a fine of not more than $20,000, or by both." Since it is clear from the record that the defendants were sentenced under AS 17.12.110(b)(1), rather than AS 17.12.110(c), the court's refusal to give their requested instruction was of no legal significance.[7]

## VI

■ Finally, Morris and Miller both claim that the superior court imposed excessive sentences. Our reversal of Miller's conviction on Count II, of course, requires that his sentence on that conviction be set aside. As to Miller's conviction on Count I, and Morris' conviction on both counts, we must determine both whether the court was "clearly mistaken," *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974), and whether it acted under an "incorrect legal assumption." *Campbell v. State*, 594 P.2d 65, 67

---

7. The trial court concluded, as a matter of law, that the defendants could reasonably have believed that Harlan was 19 years of age or older. Moreover, its remarks at and before sentencing clearly indicate the court's understanding that

the defendants were not subject to the enhanced penalties authorized by AS 17.12.-110(c). Thus, this is not a case where the court misperceived the length of the sentences that could be imposed.

(Alaska 1979). We are unable to say that the court was clearly mistaken as to the length of its sentences.

■ However, we are persuaded to remand for resentencing of both defendants because the trial judge evidently utilized an improper legal standard in imposing sentence. It appears that the superior court classified the crimes for which Morris and Miller were convicted as coming somewhere between the two worst categories of drug offenses set forth in *Waters v. State*, 483 P.2d 199, 201 (Alaska 1971).[8] In fact, Morris and Miller were convicted of "marijuana offenses" which fall within the least serious category of *Waters*. *See Snyder v. State*, 585 P.2d 229, 234 (Alaska 1978). Thus, resentencing is required because of the court's error, as the improper classification plainly "had significance in the court's sentencing decision." *See Campbell v. State*, 594 P.2d 65, 67 n.6 (Alaska 1979).

We do not mean to imply that all marijuana offenses are to be treated alike, or that a particular marijuana offense cannot be regarded as sufficiently serious to call for a heavy penalty. We believe it is important, however, that in sentencing the superior court apply appropriate legal standards.

Morris' conviction on Counts I and II is affirmed. Miller's conviction on Count I is affirmed. On Count II, Miller's conviction is reversed and the case remanded for a new trial. The sentences of both defendants are vacated and their cases remanded for resentencing in accordance with this opinion.

RABINOWITZ, C. J., concurs in part, dissents in part.

COMPTON, J., not participating.

**8.** In *Waters*, we established four "categories ... relevant in sentencing of drug offenders." In descending order of seriousness, those categories are:

  (1) Smuggling or sale of large quantities of narcotics or possession of large quantities for sale.

RABINOWITZ, Chief Justice, concurring in part, dissenting in part.

I agree with all of the court's holdings except its reversal of Miller's conviction on Count II. The majority bases its reversal upon the conclusion that Morris' statements to Curwen were not made in furtherance of their joint undertaking. Here the joint undertaking between Morris and Miller was the sale of marijuana. In my view, the questioned statements were made in the course of negotiations between Morris and Curwen and furthered that end.

Additionally, assuming error, I believe any error here was harmless. Miller was convicted by Harlan's testimony as to Miller's statements and actions, not by anything that Morris attributed to him.

(2) Smuggling or sale of small quantities of narcotics, or possession of small quantities for sale.
  (3) Possession of narcotics without intent to sell.
  (4) Marijuana offenses.
483 P.2d at 201.