## CITY OF RIVERSIDE ET AL. *v.* RIVERA ET AL.

No. A–122.   Decided August 28, 1985

JUSTICE REHNQUIST, Circuit Justice.

Applicants, the city of Riverside and five of its current or former police officers, ask that I stay pending disposition of their petition for certiorari the mandate of the Court of Appeals for the Ninth Circuit requiring applicants to pay respondents $245,456.25 in attorney's fees.   The attorney's fees were awarded by the District Court pursuant to 42 U. S. C. § 1988, following a trial in which respondents recovered from applicants a total of $33,350 in damages.   This case seems to me to present a significant question involving the construction of § 1988: should a court, in determining the amount of "a reasonable attorney's fee" under the statute, consider the amount of monetary damages recovered in

the underlying action? On August 15, 1985, I temporarily stayed the Ninth Circuit's mandate in order to permit further study of the stay application, the response thereto, and the petition for certiorari. Having fully considered the parties' submissions, I now grant the requested stay.

On August 1, 1975, respondents were attending a large private party in the Latino section of Riverside when numerous police officers entered, forcibly broke up the party, and arrested many of the guests, including four of the respondents. The four respondents who were arrested were later prosecuted, but the charges were dismissed for lack of probable cause. Respondents, in turn, filed suit against the city of Riverside, its Chief of Police, and 30 police officers, alleging violations of the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, violations of 42 U. S. C. §§ 1981, 1983, 1985(3), and 1986, and pendent state claims for conspiracy, emotional distress, assault and battery, bodily injury, property damage, breaking and entering a residence, malicious prosecution, defamation, false arrest and imprisonment, and negligence. Respondents sought compensatory and punitive damages, injunctive and declaratory relief, and attorney's fees.

Prior to trial, respondents dropped their requests for injunctive and declaratory relief, along with their original allegation that the police officers had acted with discriminatory intent. Also prior to trial, 17 of the individual defendants were dismissed on motions for summary judgment. After a 9-day trial, the jury returned a verdict exonerating another 9 of the individual defendants from liability, and awarding $33,350 to respondents based on 11 violations of § 1983, 4 instances of false arrest and imprisonment, and 22 instances of common negligence. Respondents did not prevail on any of their remaining theories of liability, no restraining orders or injunctions were ever issued against any of the defendants, and the city of Riverside was not compelled to, and did not, change any of its practices or policies as a result of the suit.

Respondents filed a post-trial motion for attorney's fees pursuant to § 1988. Following the submission of affidavits documenting the hours spent on the case by counsel for respondents, the District Court awarded respondents $245,456.25 in attorney's fees. Applicants appealed the award, and the Court of Appeals affirmed. *Rivera* v. *City of Riverside*, 679 F. 2d 795 (1982). We granted certiorari, vacated the judgment, and remanded the case for further consideration in light of our then recent decision in *Hensley* v. *Eckerhart*, 461 U. S. 424 (1983). *City of Riverside* v. *Rivera*, 461 U. S. 952 (1983). On remand, and after a brief hearing, the District Court again awarded respondents $245,456.25 in attorney's fees, and the Court of Appeals again affirmed, this time in an unpublished opinion. The Court of Appeals also denied applicants' motion for a stay pending the disposition by this Court of a petition for certiorari.

At each stage of the proceedings in this case, applicants have challenged the attorney's fee award on the ground that it is disproportionately large in comparison to the amount of the monetary judgment recovered. In the District Court, in opposition to respondents' initial request for nearly $500,000 in attorney's fees, applicants cited *Scott* v. *Bradley*, 455 F. Supp. 672 (ED Va. 1978), for the contention that "there is no reason to provide an economic windfall to Plaintiffs' counsel by awarding them sixteen times the award received by Plaintiffs in the instant action." App. to Pet. for Cert. 10–21. The opinion of the Court of Appeals on the first appeal states that "[a]ppellants urge this court to reduce the amount awarded . . . because the attorney's fees were disproportionately larger than the jury verdict." *Rivera* v. *City of Riverside*, 679 F. 2d, at 797. The Court of Appeals rejected the disproportionality argument, however, holding that "[t]he extent to which a plaintiff has 'prevailed' is not necessarily reflected in the amount of the jury verdict." *Id.*, at 798. Applicants in their petition for certiorari to this Court have

framed the more general question of "the proper standards within which a district court may exercise its discretion in awarding attorney's fees to prevailing parties under § 1988," but although such a formulation is not a model of specificity, it does "fairly subsume," *inter alia*, the disproportionality issue.

There is also presently pending before this Court a petition for certiorari in the case of *City of McKeesport* v. *Cunningham*, No. 84–1793, which raises the same issue as to disproportionality between the amount of a money judgment recovered and the size of the attorney's fee award under § 1988. In that case the District Court entered judgment for the plaintiff in the amount of $17,000 as damages for the taking of property without due process of law, and plaintiff then moved for an award of some $35,000 in attorney's fees and costs based on time spent on the case. The District Court, after review of the relevant materials, reduced the amount of the requested award because, among other things, the plaintiff's lawsuit created no new law and was unlikely to benefit anyone but the plaintiff. On appeal, the Court of Appeals for the Third Circuit reversed, holding that the District Court was wrong in applying what the Court of Appeals characterized as a "negative multiplier" based on the low value of the lawsuit to the general public. *Cunningham* v. *City of McKeesport*, 753 F. 2d 262, 268–269 (1985). The Court of Appeals directed that the plaintiffs recover the full amount of attorney's fees claimed.

In my view, the question of the proportionality of § 1988 attorney's fees to the amount of the monetary judgment awarded, a question which seems to me to be presented by each of these cases, is likely to command the votes of four Members of the Court to grant certiorari in one of the cases and to postpone consideration of the certiorari petition in the other pending plenary review of the first. I also think, for the reasons hereafter stated, that the probability of applicants' succeeding on the merits is substantial. As we have

previously acknowledged, § 1988 was enacted "to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley, supra,* at 429 (quoting H. R. Rep. No. 94–1558, p. 1 (1976)). At the same time, the statute authorizes only the award of "reasonable" attorney's fees, reflecting Congress' intent that such fees be "adequate to attract competent counsel," yet not so large as to "produce windfalls to attorneys." S. Rep. No. 94–1011, p. 6 (1976); see also H. R. Rep. No. 94–1558, *supra,* at 9. I think the award of attorney's fees in this case, representing more than seven times the amount of the monetary judgment obtained, is so disproportionately large that it could hardly be described as "reasonable."

The question of what is a "reasonable" attorney's fee involves substantial elements of judgment and discretion in the district court, but Congress has provided the courts with some guidelines for the exercise of this judgment and discretion. The Senate and House Reports accompanying § 1988 refer the courts to the 12 factors identified in *Johnson* v. *Georgia Highway Express, Inc.,* 488 F. 2d 714 (CA5 1974). Those factors include "the amount involved and the results obtained." *Hensley, supra,* at 430, n. 3. Perhaps more important, the House Committee on the Judiciary, in citing *Johnson,* chose to highlight the following five factors: "the time and labor required, the novelty and difficulty of the questions involved, the skill needed to present the case, the customary fee for similar work, *and the amount received in damages, if any.*" H. R. Rep. No. 94–1558, *supra,* at 8 (emphasis supplied).

Despite this seemingly clear statement of legislative intent, however, other Courts of Appeals in addition to the Ninth Circuit have held not only that the amount of damages received is not a *mandatory* consideration in awarding attorney's fees under § 1988, but that it is not even a *permissible* one. For example, in *DiFilippo* v. *Morizio,* 759 F. 2d 231 (1985), the Second Circuit held: "We believe a reduction

made on the grounds of a low award to be error unless the size of the award is the result of the quality of representation." *Id.*, at 235. Similarly, in *Ramos* v. *Lamm*, 713 F. 2d 546 (1983), the Tenth Circuit stated: "Some courts have reduced fees when the thrust of the suit was for monetary recovery and the recovery was small compared to the fees counsel would have received if compensated at a normal rate for hours reasonably expended. We reject this practice." *Id.*, at 557. Other courts, including the Seventh Circuit, have taken the opposite view. See, *e. g.*, *Bonner* v. *Coughlin*, 657 F. 2d 931, 934 (1981) ("[T]he nominal nature of the damages is a factor to be considered in determining the amount of the award. . . . The amount recovered may sometimes indicate the reasonableness of the time spent to vindicate the right violated"); *Scott* v. *Bradley*, 455 F. Supp., at 675.

This Court has already recognized that "[t]he product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley*, 461 U. S., at 434. Similarly, in *Blum* v. *Stenson*, 465 U. S. 886 (1984), we explained that "there may be circumstances in which the basic standard of reasonable rates multiplied by reasonably expended hours results in a fee that is either unreasonably low or unreasonably high." *Id.*, at 897. Neither *Hensley* nor *Blum*, however, addressed whether disproportionality between the amount of the monetary judgment obtained and the amount of the attorney's fee, standing alone, is a consideration that might properly lead a court to reduce the fee.

This is not to suggest that substantial attorney's fees cannot be awarded in cases involving primarily injunctive or other nonpecuniary relief, see S. Rep. No. 94–1011, *supra*, at 6 ("It is intended that the amount of fees . . . not be reduced because the rights involved may be nonpecuniary in

nature"); H. R. Rep. No. 94–1558, *supra*, at 9. Nor would an unusually large attorney's fee necessarily be inappropriate where a defendant's bad-faith conduct requires plaintiff's counsel to spend an inordinate amount of time on a case. But in this case and in *City of McKeesport*, there are only monetary judgments, and it is difficult for me to believe that Congress intended by § 1988 to authorize a prevailing plaintiff to obtain more generous court-ordered attorney's fees from a defendant than the plaintiff's attorney might himself have fairly charged to the plaintiff in the absence of a fee-shifting statute. The billing experience I gained in 16 years of private practice strongly suggests to me that a very reasonable client might seriously question an attorney's bill of $245,000 for services which had resulted solely in a monetary award of less than $34,000. In this sense nearly all fees are to a certain extent "contingent," because the time billed for a lawsuit must bear a reasonable relationship not only to the difficulty of the issues involved but to the amount to be gained or lost by the client in the event of success or failure. Nothing in the language of § 1988 or in the legislative history set forth above satisfies me that Congress intended to dispense with this element of billing judgment when a court fixes attorney's fees pursuant to the statute.

Thus, I conclude that it is likely that certiorari will be granted in either this case or *City of McKeesport*, or both, and that the likelihood of applicants' prevailing on the merits is sufficiently great to warrant the granting of a stay. Respondents contend that the supersedeas bond previously posted by applicants is inadequate to cover interest on the amount of the judgment, but this is an issue which may more properly be addressed in the first instance by the District Court.